UNITED STATES of America, Appellee,

v.

MELLON BANK, N. A.,

and

Milton F. Meissner, Intervenor
Respondent-Appellant.

No. 76–1661.

United States Court of Appeals,
Third Circuit.

Argued Oct. 19, 1976.

Decided Dec. 7, 1976.

Scott P. Crampton, Gilbert E. Andrews, Jr., Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D. C., Jeffrey S. Blum, Blair A. Griffith, Pittsburgh, Pa., for appellee.

R. Kenly Webster, Kennedy & Webster, Washington, D. C., Edward C. Schmidt, Rose, Schmidt & Dixon, Pittsburgh, Pa., for appellant.

Before SEITZ, Chief Judge, and HUNTER and GARTH, Circuit Judges.

JAMES HUNTER, III, Circuit Judge:

Milton F. Meissner appeals from an order of the United States District Court for the Western District of Pennsylvania staying an action for levy and seizure of a safe deposit box, pending the outcome of criminal proceedings against Meissner in the Southern District of New York. Alternatively, Meissner asks us to regard his appeal as a petition for a writ of mandamus ordering the district court to vacate the stay. The Mellon Bank, which leased the safe deposit box to Meissner, is a mere stakeholder and is not involved in this appeal. Treating Meissner's appeal as a petition for a writ of mandamus, we must dismiss it.

## I.

Meissner allegedly was linked to various securities and tax frauds involving Robert Vesco and Investors Overseas Services. On April 9, the Internal Revenue Service entered a jeopardy assessment against Meissner and his wife,[1] who now reside in Costa Rica. On April 10, 1974, the Government served notice of levy and seizure on the Mellon Bank, which had leased a safe deposit box to Meissner and his wife.[2] The Bank refused to permit the Government to break into the box, which remains sealed.

On July 26, 1974, the Government petitioned the court below for an order directing the opening of the box.[3] Meissner was granted leave to intervene in that proceeding and opposed the attempted seizure. In September of 1974, he initiated a suit in the Tax Court to contest the jeopardy assessment.

Meissner opposed the seizure of the contents of the safe deposit box on several constitutional and other legal grounds. Primary among them was his contention that the Government had no genuine tax purpose for the seizure proceeding, that it wanted to examine the contents of the box merely to gather evidence for the criminal investigation of Meissner then in progress. He sought discovery of certain Government documents that would, he claimed, support this charge of bad faith.

The district court held that it lacked jurisdiction to consider Meissner's claims and denied his discovery motion. This court reversed, *United States v. Mellon Bank, N. A.,* 521 F.2d 708 (3d Cir. 1975) (*Mellon Bank I*). In the meantime, Meissner had obtain-

---

1. This action was taken pursuant to 26 U.S.C. § 6861, which reads in pertinent part as follows:

    *Jeopardy Assessments of income, estate, and gift taxes*
    (a) *Authority for making.*—If the Secretary or his delegate believes that the assessment or collection of a deficiency . . . will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

2. This action was taken pursuant to 26 U.S.C. §§ 6321, 6331. Section 6321 creates a lien in favor of the United States against the property of any person who fails to pay any tax after demand. Section 6331 authorizes the government to levy upon and seize any property on which there is such a lien, if payment of the tax is not made within ten days of demand.

3. 26 U.S.C. § 7402 confers upon the district courts the power to enter all orders and judgments necessary for the enforcement of the internal revenue laws.

ed a stay of his Tax Court proceeding, alleging that it might jeopardize his fifth amendment rights with respect to criminal investigations then occurring.

On remand, the district court granted Meissner access to the documents he had requested. He maintains that several of these are sufficient to demonstrate the Government's bad faith in bringing the seizure action. Nevertheless, on January 16, 1976, two days after he was indicted for tax evasion in the Southern District of New York, Meissner sought further discovery in the seizure proceeding. This time he requested the following Government materials:

All documents relating to:

a. Any investigation of Dr. and/or Mrs. Meissner by any section or division of the Internal Revenue Service, including, but not limited to, the Audit Section, Collection Section, and Intelligence section;

b. Any investigation by any agency or department of Petitioner, U.S. Government, including, but not limited to the Internal Revenue Service, Securities and Exchange Commission and the Department of Justice in connection with any violations of law by Investors Overseas Services, and other related businesses and/or companies, Robert Vesco and/or any other individuals connected with IOS and/or related businesses and/or companies which relate to Dr. or Mrs. Meissner.

The court did not act on the motion. Instead, in an order of February 17, 1976, it granted the government's motion to continue the proceedings until final disposition of the criminal matter in the Southern District

of New York. The court grounded this order on the finding that "substantial matters of the same nature exist in both the criminal and civil proceedings." Meissner appeals from that order.

## II.

### A.

■ At the outset, we are met with the Government's claim that a stay is not an appealable order, because it is not "final" under 28 U.S.C. § 1291.[4] In *Rodgers v. United States Steel Corp.*, 508 F.2d 152, 159 (3d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), this Court established three requisites for a "final order":

(1) It must be a final rather than a provisional disposition of the issue;

(2) it must not be merely a step toward final disposition of the merits;

(3) and the rights asserted must be threatened with irretrievable loss if review is postponed.

■ Irretrievable loss could certainly be found if the stay order had "the practical effect of a dismissal of the proceedings." *In re Grand Jury Proceedings*, 525 F.2d 151, 155 (3d Cir. 1975). Meissner declares that it does have this effect, because the Government, which seems unable to extradite him from Costa Rica, will never be in a position to conclude the criminal proceeding in New York. Therefore, says Meissner, the civil action will remain similarly unresolved, and he will forever be denied access to his safe deposit box.[5]

We are unwilling, however, to permit the appealability of the district court's order to turn on matters so peculiarly within the

---

4. 28 U.S.C. § 1291 reads as follows:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

5. We note, however, that the last time Meissner appeared before this Court he seemed agreeable to the idea of keeping the box sealed

until the Tax Court makes its final determination. *Mellon Bank I*, 521 F.2d at 710 n. 6. His stay of the Tax Court proceedings, combined with his insistence here that the seizure proceedings must go forward even though the box would remain sealed, lends support to the theory that Meissner wishes to keep the seizure proceeding alive only so that he may use the civil court's discovery mechanism in connection with his defense of the criminal charges pending in the Southern District of New York. *See* notes 6 & 7 *infra*.

control of one of the parties. The stay effects a permanent forfeiture of the box's contents only if Meissner allows it to do so. If he is genuinely concerned that the failure to resolve the criminal proceeding may work a denial of his rights in the civil case, he can submit to the jurisdiction of the Southern District of New York and see that the criminal matter is closed. *Cf. Cotler v. Inter-County Orthopaedic Ass'n*, 526 F.2d 537 (3d Cir. 1975) (stay pending resolution of state proceedings not final order, even though claim might be "old and feeble" after state proceeding concluded).

Alternatively, he could abandon his motion for additional discovery and proceed on the basis of the documents obtained on his first discovery motion. These, Meissner tells us, are already sufficient to prove the Government's bad faith in the seizure proceeding.[6] The Government has acknowledged its willingness to move to vacate the stay, if Meissner would agree to drop the burdensome request for additional documents.

A third alternative for the ultimate resolution of Meissner's rights in the safe deposit box is the reopening of his Tax Court proceeding, which will either confirm or disprove the existence of the deficiency upon which the levy and seizure are premised.[7] Thus, Meissner himself has at least three approaches to rendering the stay order genuinely non-final. We cannot say with assurance that he will choose not to avail himself of any of them, nor do we know for certain that the Government will prove unable to extradite him from Costa Rica. In any event, we see no reason to allow Meissner to create for himself an appeals as of right, depending only upon his refusal to take any steps toward the ulti-mate resolution of his rights in the usual channels. Otherwise, our appellate jurisdiction would be at the mercy of anyone in Meissner's admittedly unusual position.

### B.

■ Although the stay in this case is not an appealable, final order, we do have discretionary power to review interlocutory orders of the district court under the All Writs Act, 28 U.S.C. § 1651.[8] *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967); 9 J. Moore, Federal Practice ¶ 110.26, at 286–88 (2d ed. 1975). This supervisory control, however, is limited to cases of clear abuse of the district court's discretion, *La Buy, supra* at 257, and the writ of mandamus is reserved for "the exceptional, unusual case," 9 J. Moore, *supra* at 286.

■ The question before us, then, is not whether the district judge's interlocutory order "was a correct exercise of his discretion but whether this situation is an appropriate instance for the use of the extraordinary writ of mandamus." *Securities and Exchange Commission v. Stewart*, 476 F.2d 755, 756 (2d Cir. 1973). The *Stewart* court explained the importance of this distinction:

> While such an issue may seem technical, it is not, for it raises grave questions of the continued strength of the salutary final judgment rule in the federal courts and the propriety of appellate interference with the trial process in an early stage of the proceedings . . . .

*Id.*

■ We find no abuse of discretion in the case *sub judice*. It was clearly within the

---

6. Given this claim, it is difficult to see the purpose of Meissner's second, broad-gauge discovery request, unless it is designed to aid his defense against criminal charges.

7. Again, Meissner's stay of the Tax Court suit appears to evidence a desire to delay all proceedings except the one in which he can take advantage of the discovery rules.

8. The All Writs Act reads as follows:
   § 1651. *Writs*
   (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
   (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

power of the district court to balance "competing interests" and decide that judicial economy would best be served by a stay of civil proceedings. *Texaco, Inc. v. Borda,* 383 F.2d at 609. The court found, and Meissner does not contend otherwise, that the civil matter before it and the criminal case in New York involved "substantial matters of the same nature." Hence, it might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case. *See id.* at 608–09. Furthermore, the similarity of the issues left open the possibility that Meissner might improperly exploit civil discovery for the advancement of his criminal case. *See* notes 5, 6 & 7 *supra; Campbell v. Eastland,* 307 F.2d 478, 487–88 (5th Cir. 1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). Against these considerations in favor of the stay, the district court had to balance the hardship imposed on Meissner: denial of access to his safe deposit box. The last time Meissner appeared before this court, the prospect of having the box remain sealed for an indeterminate period did not seem unpleasant to him. *See* note 5 *supra.* At

any rate, he can seek to avoid that hardship by following one of the three approaches outlined above.

Meissner argues that he suffers substantial hardship, and he cites *Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), and *Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed. 416 (1976) for support. These cases avail Meissner nothing. *Laing* held only that the tax owing but not reported at the time of a termination assessment under 26 U.S.C. § 6851[9] is a "deficiency," the assessment and collection of which is subject to the procedural protections of section 6861 *et seq.* One of these is the right to contest the deficiency in the Tax Court.[10] Since Meissner's assessment was in fact made under section 6861, and since he in fact initiated a Tax Court proceeding, which he voluntarily halted, it is difficult to see how any of his rights under *Laing* are violated by the stay in this case.[11]

*Shapiro* is even less apposite. It held that a taxpayer who seeks to enjoin assessment and collection of a tax is entitled to some minimum disclosure of the govern-

---

9. Section 6851 reads in pertinent part as follows:

Termination of Taxable Year
(a) *Income tax in jeopardy.*—
(1) *In general.*—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the

Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.

10. Under 26 U.S.C. § 6213, a notice of deficiency is a jurisdictional prerequisite for a taxpayer's suit in the Tax Court. Section 6851 does not call for the provision of such notice, but § 6861 does. Thus, by including § 6851 termination assessments under the "deficiency" rubric of § 6861, the Supreme Court enabled taxpayers to litigate the validity of termination assessments in the Tax Court. *See Laing v. United States,* 423 U.S. 161, 176, 96 S.Ct. 473, 4 L.Ed. 416 (1976).

11. In his concurrence in *Laing,* Mr. Justice Brennan, citing *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), did suggest that due process might require the government to make a prompt, post-seizure showing of probable success in the Tax Court. Meissner himself, however, obtained a stay of the Tax Court proceedings more than a year ago. Even if Mr. Justice Brennan's views were held to be the law, then, Meissner could not be heard to complain of the delay.

ment's factual foundation for the assessment. This disclosure, the *Shapiro* court held, is necessary if the plaintiff is to have any chance to meet the particularly heavy burden imposed upon those seeking to qualify under the exemption to the Anti-Injunction Act.[12] Meissner, though, is not asking for disclosure. He demands a prompt adjudication of his rights, and *Shapiro* does not touch upon the celerity with which the court must adjudicate the validity of the assessment. Again, we note that Meissner himself, by obtaining a stay of the Tax Court case, has delayed the very adjudication he purports to desire.

In sum, we cannot say that the district court abused its discretion in deciding that the considerations in favor of the stay were weightier than Meissner's claims of the hardship it would cause. Therefore, the appeal will be dismissed, and if considered as a petition for writ of mandamus, will be denied, in accordance with the opinion of this Court.

---

12. 26 U.S.C. § 7421(a), the Anti-Injunction Act, reads as follows:

Prohibition of Suits to Restrain Assessment or Collection

(a) *Tax.*—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

In order to avoid the application of the Anti-Injunction Act, the taxpayer must satisfy the requirements of *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962): (1) he must show extraordinary circumstances causing irreparable harm; (2) he must also demonstrate that under the most liberal view of the law and the facts, the government could under no circumstances establish the validity of its claim. The *Shapiro* Court reasoned that unless the government has some obligation to disclose the factual basis for its assessments, no taxpayer could ever meet the second requirement.