594 P.2d 550

**Dee Ann NELSON, Petitioner,**

**v.**

**Hon. J. Richard HANNAH, Judge of the Superior Court, Division XII, Pima County, State of Arizona, Respondent,**

**and**

**Robert Neeley Talbott, Defendant,**

**State of Arizona, Plaintiff, Real Parties in Interest.**

**No. 2 CA–CIV 3249.**

Court of Appeals of Arizona, Division 2.

April 24, 1979.

Messing Law Offices by John H. Messing, Tucson, for petitioner.

Richard S. Oseran, Pima County Public Defender by Charles J. Babbitt, Asst. Public Defender, Tucson, for real party in interest Talbott.

Stephen D. Neely, Pima County Atty. by John E. Davis, Deputy Pima County Atty., Tucson, for real party in interest State of Arizona.

OPINION

HOWARD, Judge.

Petitioner has brought this special action to challenge the trial court's ordering her to give deposition testimony. Since she is without an adequate remedy by appeal, we assume jurisdiction and grant relief.

Petitioner is a prospective witness for the state in State v. Talbott, Pima County Cause No. A–34075. She was a co-defendant with Mr. Talbott, a real party in interest, but was granted a severance and eventually was convicted of unlawful possession of marijuana for sale. At her trial, she testified about her involvement in the events which formed the basis of the charge in her case. Counsel for Talbott has a copy of the transcript of her trial testimony.

On April 10, 1979, the respondent judge ordered petitioner to give Talbott a deposition "pertaining to the transaction involved in this indictment, namely, the December 2, 1977 incident with regard to the alleged possession of marijuana for sale, . . . " Also, petitioner was served with a subpoena from the Pima County Attorney requiring her to appear at a grand jury investigation regarding potential drug conspiracy charges arising out of the events which are the subject of the Talbott trial.

Petitioner appeared for the taking of her deposition on the morning of April 12 but refused to answer the questions propounded on the ground they would tend to incriminate her. After a hearing on Talbott's motion to compel her testimony, the court ruled that petitioner was required to answer the questions.

In *Ottomano v. United States*, 468 F.2d 269 (1st Cir. 1972), cert. den. 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260, a similar situation, the court stated:

"We note at the outset that appellant's testimony at his own trial did not constitute a waiver of his fifth amendment privilege against self-incrimination. The great weight of authority is to the effect that waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding. *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958); *In re Neff*, 206 F.2d 149 (3d Cir. 1953); *Poretto v. United States*, 196 F.2d 392 (5th Cir. 1952); *United States v. Steffen*, 103 F.Supp. 415 (N.D.Cal.1951). *But see Ellis v. United States*, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969). The government

argues, however, that since Ottomano had already been convicted on the same indictment under which Russell was being tried, he was subjected to no real danger of further incrimination by the requirement that he testify. We disagree." 468 F.2d 273–74.

In *Malloy v. Hogan*, 150 Conn. 220, 187 A.2d 744 (1963), rev'd on other grounds, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the Connecticut Supreme Court said:

". . . Malloy could not again be convicted of the identical crime of pool selling, and if this was the only possible danger of self-incrimination the privilege of refusal to answer would not exist. *United States v. Romero*, 249 F.2d 371, 375 (2d Cir.). However, the statute, § 53–295, under which the 1959 conviction was had, penalized a number of closely related acts, all basically concerned with pool selling, and as to many of these acts it provided that 'each day of * * * [doing the act] shall constitute a separate offense.' Even though Malloy could not again be tried on the identical charge on which he was convicted, he was entitled to assert his claim of privilege if there was a danger that his answers to the questions might furnish a 'lead' to information which could be used to procure his conviction on a charge based on some other offense committed on the same day or on a charge based on the same or another offense committed on some other day, even the following day. See cases such as *Hoffman v. United States*, supra, 341 U.S. [479] 486, 71 S.Ct. [814] 818, [95 L.Ed. 1118]; *Blau v. United States*, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170." 187 A.2d at 748–49.

See *United States v. Miranti*, 253 F.2d 135 (2nd Cir. 1958) where the Second Circuit Court of Appeals held that even where the threat of a second prosecution is remote, a Fifth Amendment privilege may still be invoked. Cf. Annot., 9 A.L.R.3d 990 (1966).

The threat of further prosecution is a real one for petitioner. Since she has been ordered to answer questions which conceivably will extend beyond what was covered in

her trial, thereby leading to the filing of new criminal charges against her, her invocation of her Fifth Amendment privilege was well-founded.

The order commanding petitioner's deposition is vacated.

RICHMOND, C. J., and HATHAWAY, J., concurring.