601 P.2d 318

Cheryle **RODRIGUEZ**, Dan **Huff** and Citizen Publishing Company, Petitioners,

v.

The **PIMA COUNTY SUPERIOR COURT**, Respondent,

and

Stephen D. **Neely**, Pima County Attorney, Real Party in Interest.

No. 2 CA–CIV 3324.

Court of Appeals of Arizona, Division 2.

Aug. 3, 1979.

Rehearing Denied Sept. 12, 1979.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C., by Michael J. Meehan, Tucson, for petitioners.

Stephen D. Neely, Pima County Atty., Tucson, for real party in interest.

## OPINION

RICHMOND, Chief Judge.

Petitioners have brought this special action to challenge the issuance of subpoenas to two reporters from a Tucson newspaper as part of an investigation by the Pima County Attorney of alleged drug use by members of his staff.

On May 10, 1979, the Tucson Citizen published an article written by the individual petitioners concerning the use of cocaine in Tucson. The story contained the following:

"A deputy county attorney, who uses cocaine 'every chance I get,' says the effects are 'nice . . . but not that pronounced and don't last that long. You can snort some in the morning and take off for work, and by the time you get there, all you've got is a runny nose.'

The prosecutor says he could never handle a case against cocaine users because he would feel too hypocritical. He said he doubts that attorneys who do prosecute users snort the drug themselves, but adds that at least one or two other attorneys in his office, not assigned to prosecute drug cases, use cocaine.

By contrast, he estimates that well over half the 26 attorneys assigned to non-narcotic adult felonies in the County Attorney's office are occasional marijuana users."

On the following day, the Pima County Attorney wrote to the editor of the Tucson Citizen seeking the identification of anyone on his staff engaged in the conduct described in the article. On May 14, the Pima County Attorney filed a Request to Convene Rule 2.4 Hearing, a supporting affidavit and a Criminal Complaint Felony, charging John Doe with the unlawful possession of dangerous drugs. The request asks that

petitioners Rodriguez and Huff be subpoenaed and compelled to produce all source material used in connection with the preparation of the story.

At a hearing June 8, petitioners Huff and Rodriguez joined in a motion to intervene and for amicus curiae status previously filed by the Tucson Citizen. They also moved for the disqualification of the Pima County Attorney because he had a personal interest in the outcome of the proceedings. They attached affidavits stating that they had promised complete confidentiality to the source of their material and had no personal knowledge of any violations other than what they had been told by their source. They filed a motion to quash the subpoenas based on three grounds: (1) that the issuance of the subpoenas were in violation of Arizona's shield law, A.R.S. § 12–2237; (2) that the procedure used by the Pima County Attorney was not authorized by Rule 2.4, Arizona Rules of Criminal Procedure, 17 A.R.S.; (3) that the subpoenas were in violation of their First Amendment rights. During the hearing, the Pima County Attorney filed an amended Criminal Complaint Felony charging John Doe with both the unlawful possession of a dangerous drug and unlawful possession of marijuana. In response to the amended complaint, petitioners filed affidavits disclaiming any knowledge of marijuana use by deputy county attorneys other than that recounted by their source. Following the hearing, at which no testimony nor other evidence was offered, the motion of the Tucson Citizen to intervene was denied, as well as the motion of the petitioners to disqualify the Pima County Attorney. The motion to quash the subpoenas was denied on all issues except the shield law issue which was subsequently rejected.

Of the contentions raised by petitioners below, our attention need only be focused at this time upon the second one. The subpoenas were issued in furtherance of a proceeding under Rule 2.4. Since we believe that rule to be inappropriate under the circumstances, the issuance of the subpoenas was in excess of the trial court's jurisdiction and they are quashed.

The determinative issue is whether a Rule 2.4 hearing is appropriate to inquire into the existence of criminal conduct and to attempt to establish the identity of people who have committed public offenses. Petitioners are incorrect in stating that Rule 2.4 does not allow a "one-man grand jury" and that it significantly differs from the former rules. Prior to September 1, 1973, Rules 1(B) and 2 provided:

"Rule 1. Commencement of action by complaint; duty of magistrate

\* \* \* \* \* \*

B. When a complaint is made to a magistrate that an offense has been committed, he shall examine on oath the complainant and any witness the complainant produces and any witness subpoenaed by the magistrate. If the county attorney so requests, the magistrate shall subpoena witnesses for examination. The magistrate may take the affidavit of any such witness and cause the affidavit to be subscribed by the person making it.

Rule 2. Issuance of warrant of arrest

A warrant shall be issued, except as provided by subsections A and B in Rule 11, for the arrest of the person complained against if the magistrate from the examination of the complainant and the witnesses, if any, has reasonable ground to believe that an offense was committed and that the person against whom the complaint was made committed it."

When the old rules are compared with present Rule 2.4, it can be seen that the latter is a combination of the two former rules:

"Rule 2.4 Duty of magistrate upon filing of complaint

The magistrate before whom a complaint or Rule 2.1(a) information is filed, shall subpoena for examination such witnesses as he deems necessary, and such additional witnesses as may be requested by the prosecutor. If he determines from the complaint, any affidavits filed, and any testimony taken,

that there is reasonable cause to believe an offense has been committed and the defendant committed it, the magistrate shall proceed under Rule 3.1; if not he shall dismiss the complaint."

*State v. Brady,* 18 Utah 2d 434, 425 P.2d 155 (1967), does not support petitioners' position. The Utah statute, § 77–11–3, U.C.A. 1953, stated:

"Complainant to be examined.—When a complaint is made before a magistrate charging a person with the commission of a crime or [a] public offense, such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other persons and may take their depositions."

It differs from the Arizona rule which authorizes the magistrate to examine witnesses, under oath, in order to determine whether an offense has been committed and whether the defendant committed it. Our rule calls for the actual determination of probable cause to be made by the magistrate after a criminal complaint has been filed.

■ Nevertheless, even granting that the rules permit a "one-man grand jury" procedure to determine probable cause whether the defendant committed the offense charged, the question here is whether a "John Doe" complaint can be used under Rule 2.4. Before the magistrate can examine the witnesses, there must be a complaint on file under Rule 2.3. That rule sets forth the contents of the complaint as "a written statement of the essential facts constituting a public offense, made upon oath before a magistrate." In the complaint before us, the alleged perpetrators are merely described as deputy Pima County attorneys, the description given them in the newspaper article. An essential "fact" is the name of the accused. As stated in 22 C.J.S. Criminal Law § 311, p. 808:

"The identity of the person accused of the crime alleged must in some manner appear in the affidavit, complaint, or information; the name of the accused must be stated if it is known; if unknown and a fictitious name is used, the person charged with the offense must be described."

Other states which utilize the "one-man grand jury" proceeding as respondents would have us do have specific "John Doe" proceeding statutes. Wisconsin, for instance, under Wis.Stat.Ann. § 968.26, formerly § 954.025, mentioned in *State v. Brady,* supra, states:

"If a person complains to a judge that he has reason to believe that a crime has been committed within his jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain *whether a crime has been committed and by whom committed.* . . . If it appears . . . that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified . . . " (Emphasis added)

South Dakota, another state which allowed a general inquiry proceeding, utilized S.D. Compiled Laws, § 23–20–10, repealed July 1, 1979, which stated:

"Whenever a complaint verified positively or upon information and belief by the attorney general, state's attorney or city attorney, is laid before any magistrate that a criminal offense has been committed in this state and asking for an investigation of the same, such magistrate shall issue his subpoena requiring any person he may deem proper to attend before him at the time and place mentioned in such subpoena and submit to an examination and give testimony concerning any violation of law about which he may be questioned. . . . "

■ When read together, Rules 2.3 and 2.4, in the use of the term "essential facts" and by requiring the magistrate to find probable cause that "the defendant" committed the public offense, do not authorize a general inquiry into whether a crime has been committed and who committed it.

The Pima County Attorney's attempt to use Rules 2.3 and 2.4 for that purpose is incorrect.

In *Erdman v. Superior Court of Maricopa County*, 102 Ariz. 524, 433 P.2d 972 (1967), the court quoted from an early Arizona case, *Turley v. State*, 48 Ariz. 61, 59 P.2d 312 (1936):

"  .   .   . It will be seen thereby that when the complaint is laid before the magistrate, if he has any reason to believe that the person who signed it, notwithstanding his positive allegations, is acting merely on unwarranted suspicions .   .   . *the accused* has committed the crime charged, .   .   ." 102 Ariz. at 526, 433 P.2d at 974 (Emphasis added)

In *Erdman,* supra, the court said:

"The object of a complaint is to inform *a defendant* in language definite and specific of the essential elements of the crime for which he is charged." 102 Ariz. at 527, 433 P.2d at 975 (Emphasis added)

We think the language precludes the general investigation sought by the county attorney. Neither the former nor present rules allow the magistrate to conduct an investigation to ascertain the identity of a perpetrator. The only purpose of the Rule 2.4 hearing is to determine whether probable cause exists to believe that a named, or adequately described, defendant committed a public offense. Our holding does not leave the Pima County Attorney without remedy. It is to be noted that A.R.S. § 21–407 gives to the grand jury the power to "inquire into every offense which may be tried within the county .   .   ."[1]

The respondent court is ordered to quash the subpoenas and dismiss the proceedings.

Relief granted.

HATHAWAY and HOWARD, JJ., concur.

---

[1]. An investigation by the grand jury in this case would require that the Attorney General be appointed as a special prosecutor. See A.R.S. §§ 21–408(B) and 21–407(A).