655 P.2d 349

Cynthia FLAGLER, Petitioner,

v.

The Honorable David DERICKSON, Judge of the Superior Court, Maricopa County, Respondent,

and

The STATE of Arizona, Real Party in Interest.

No. 15988–SA.

Supreme Court of Arizona, En Banc.

Nov. 23, 1982.

Barry Leverant by William Mettler, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen. by Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for respondent.

HOLOHAN, Chief Justice.

Petitioner Cynthia Flagler brings this special action from a contempt finding against her by the respondent judge. We assumed jurisdiction under Ariz. Const. Art. 6, § 5(1).

On March 11, 1982, petitioner was served with a criminal subpoena in a matter captioned State of Arizona, plaintiff, v. Richard Roe, defendant, CR–125211. The subpoena required petitioner to appear and give testimony before Judge David Derickson.

During the hearing held on March 18, 1982, the state's attorney cross-examined petitioner in the presence of her attorney. The questioning centered on petitioner's working and social relationship with Ray Sanchez, whose ex-wife had been murdered. Throughout the cross-examination, counsel for petitioner objected to the state attorney's questions on the grounds of self-incrimination. Following adverse rulings on several such objections, the judge required petitioner to answer the questions contrary to the advice of counsel and petitioner's own wishes. Ultimately, petitioner's attorney instructed her to answer no further questions. The court then held petitioner in contempt.

Petitioner argues that the court exceeded its jurisdiction under criminal Rule 2.4 and abused its discretion by violating petition-

er's constitutional privilege against self-incrimination. We agree.

### RULE 2.4

Petitioner came before respondent judge pursuant to Rule 2.4, Arizona Rules of Criminal Procedure, 17 A.R.S. The court issued the subpoena under a petition or complaint which failed to name or describe the defendant. The Arizona Court of Appeals, Division II, in *Rodriguez v. Superior Court,* 123 Ariz. 555, 601 P.2d 318 (App. 1979) held it was improper to use a "John Doe" complaint similar to the "Richard Roe" complaint or petition issued here.

*Rodriguez* dealt with the state's efforts to subpoena newspaper reporters in order to obtain the names of alleged drug users on the Pima County Attorney's staff. The Court of Appeals held the trial court exceeded its Rule 2.4 jurisdiction by issuing the subpoenas.

■ We expressly decline to approve the dicta in *Rodriguez* to the effect that Rule 2.4 permits a "one-man grand jury." We agree with the court of appeals, however, in its finding that Rule 2.4 does not permit a general inquiry into whether a crime has been committed and who committed it. The purpose of Rule 2.4 is to ascertain "whether probable cause exists to believe that a named, or adequately described, defendant committed a public offense." *Rodriguez, supra,* 123 Ariz. at 559, 601 P.2d at 322.

■ The state further maintains it filed a Petition to Correct Caption which cured any defect in the "Richard Roe" complaint. Since it is not clear on the record when the Petition to Correct was filed and/or granted, we are unable to conclude the subpoenas were issued pursuant to a complaint which properly identified the defendant.

We turn to the fifth amendment issue in order to provide guidance for the trial judge in the event petitioner is properly subpoenaed in this matter.

### PETITIONER'S FIFTH AMENDMENT CLAIM

■ The privilege against self-incrimination is guaranteed by article 2, § 10 of the Arizona Constitution and by the Fifth Amendment to the United States Constitu-
tion, applied to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). It extends beyond obvious admissions of guilt to encompass statements which may only *tend* to incriminate by furnishing one link in the chain of evidence required to convict. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Emspak v. United States,* 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955); *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Nelson v. Hannah,* 122 Ariz. 296, 594 P.2d 550 (App. 1979); *Thoresen v. Superior Court,* 11 Ariz. App. 62, 461 P.2d 706 (1969); *Phelps Dodge Corp. v. Superior Court,* 7 Ariz.App. 277, 438 P.2d 424 (1968). To validly invoke the Fifth Amendment, the witness must apprehend a real and appreciable danger of prosecution. *Zicarelli v. New Jersey State Comm. of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

In this case, petitioner was subpoenaed to testify about her relationship and contacts with the ex-husband of a murder victim. Both the document commencing the proceeding and the subsequent subpoena failed to state the defendant's name or to describe the defendant with sufficient particularity to enable petitioner to ascertain precisely who was under suspicion.

■ The state claims it should have been apparent to petitioner that the investigation was focused on Ray Sanchez. It is the state's position, then, that petitioner improperly invoked her privilege solely to protect Sanchez. Because the privilege is personal to the one claiming it, the Fifth Amendment may not be used for the benefit of a third party. *Rogers v. United States, supra; Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *McAlister v. Henkel,* 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed.2d 671 (1906); *State v. Cota,* 102 Ariz. 416, 432 P.2d 428 (1967), *cert. denied,* 390 U.S. 1008, 88 S.Ct. 1256, 20 L.Ed.2d 109 (1968). While the state may have expected petitioner's statements to be

incriminatory of Sanchez alone, the validity of a claim of privilege turns upon what the answers conceivably may reveal and not upon what the investigator anticipates uncovering. *Zicarelli v. New Jersey State Comm. of Investigation, supra; Hoffman v. United States, supra.*

■ To properly assess a claim of privilege, the judge must consider all of the attendant circumstances. Here it was quite logical for petitioner to fear her own implication in the crime. After answering most of the state's preliminary inquiries, petitioner balked when asked to disclose the hour she last saw Sanchez on the day of his ex-wife's death. It takes very little imagination to envision any number of potentially incriminating responses to that particular question. At a minimum, petitioner's answer might furnish one tiny link in the chain of evidence tending to establish her knowledge that a crime had been or was about to be committed.

■ A judge may deny the claim of privilege only where it is " 'perfectly clear' from a careful consideration of all the circumstances in the case, that the witness is mistaken and that the answer cannot possibly have such tendency to incriminate." *Malloy v. Hogan, supra,* 378 U.S. at 12, 84 S.Ct. at 1496, *citing Hoffman v. United States, supra,* 341 U.S. at 488, 71 S.Ct. at 819. Admittedly, this places a heavy burden on the judge who decides to compel testimony over a fifth amendment claim. *See Malloy v. Hogan, supra,* (White, J., dissenting); Udall and Livermore, Arizona Practice, Law of Evidence § 77 (2nd ed. 1982). Such a burden is entirely appropriate where, as here, a fundamental guarantee against unwarranted governmental intrusion is at stake.

There would be little left of the constitutional privilege against self-incrimination were the witness forced to surrender that privilege in order to be shielded by it. Judge Learned Hand recognized this dilem-

ma in *United States v. Weisman,* 111 F.2d 260, (2d Cir.1940), stating:

> Obviously, a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practical solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available. 111 F.2d 262, quoted in *Phelps Dodge v. Superior Court, supra,* 7 Ariz.App. at 280, 438 P.2d at 427.

The trial court in *Phelps* determined it had sufficient information before it to pass favorably on the claim of privilege and, therefore, declined even to peek through the "crack in the door." [1] The validity of petitioner's assertion is equally obvious and needed no further inquiry to sustain it.

■ Under these circumstances, petitioner's fear of self-incrimination was far from illusory. Consequently, the judge erred in denying petitioner's claim of privilege and improperly found her to be in contempt. Moreover, if petitioner's testimony were absolutely vital to the investigation of Sanchez, the state could have circumvented petitioner's claim of privilege by granting immunity.

The prayer for relief is granted and the contempt order and jail sentence are vacated.

GORDON, V.C.J., HAYS, CAMERON and FELDMAN, JJ., concur.

---

1. *Phelps* was a civil action for conspiracy to defraud through the use of employee bribes. In that case, the plaintiff sought to inspect defendant's records and correspondence concerning defendant's shipments and sales to the plaintiff.

The trial court concluded and the court of appeals agreed that any records which were relevant to the civil suit likewise could be used in a criminal prosecution.