808 P.2d 305

**STATE of Arizona, Plaintiff–Appellee,**

v.

**Calvin Duane OTT, Defendant–Appellant.**

**No. 1 CA–CV 89–250.**

Court of Appeals of Arizona, Division 1, Department E.

Oct. 18, 1990.

Review Denied April 23, 1991.

John Verkamp, Coconino County Atty. by Richard S. Vihel, Deputy County Atty., Flagstaff, and Robert K. Corbin, Atty. Gen. by Cameron H. Holmes, Asst. Chief Counsel, and Daniel J. Kiley, Asst. Atty. Gen., and Pamela G. Wiens, Phoenix, for plaintiff-appellee.

Budoff & Ross, P.C. by Marc Budoff, and Michael V. Black and Tracey Westerhausen, Phoenix, for defendant-appellant.

## OPINION

McGREGOR, Judge.

Defendant/appellant Calvin Duane Ott (Ott) appeals from summary judgment in favor of the state in a civil racketeering action. The issues on appeal are whether the trial court erred in ordering Ott to respond to requests for admission, over Ott's assertion of his privilege against self-incrimination under the fifth amendment of the United States Constitution; whether the court abused its discretion in denying Ott's application for a stay pending the outcome of the criminal proceedings against him; whether the court erred in granting summary judgment in favor of the state; and whether the court erred in awarding the state interest on the judgment.

## I.

Ott was indicted on two criminal counts involving the alleged sale and distribution of cocaine. While the criminal case was pending, the Coconino County Attorney filed a civil racketeering action against Ott. The civil action, based on the same conduct that was the subject of the criminal indictment, sought forfeiture to the state of property allegedly worth more than $1.8 million. See A.R.S. §§ 13-2314.D.6 and -4301. With the complaint, the state served nonuniform interrogatories and requests for admission. See Rules 33 and 36, Arizona Rules of Civil Procedure.

Parroting the language of the criminal indictment, the requests for admission required Ott to admit or deny facts central to his alleged criminal activities.[1] Ott initially refused to respond to the requests for ad-

---

1. The text of the requests for admissions is as follows:

    1. I am familiar with the distribution of cocaine in Coconino County and Yavapai County, Arizona.
    2. I have operated a cocaine distribution enterprise.
    3. I have managed the day-to-day business of cocaine distribution enterprise.
    4. I have collected money from cocaine distribution enterprise employees or managers that was paid to them by customers.
    5. I have engaged in cocaine distribution for money.
    6. I have spoken to others who have said that they have engaged in cocaine distribution for money.
    7. I know of my own knowledge that my reputation among people I know is that I am associated with cocaine distribution enterprises.
    8. I have used a narcotic, cocaine.

    9. I have purchased large quantities (pounds) of cocaine from [Jane Doe] and [John Doe].
    10. I have possessed a narcotic with the intent to sell it.
    11. I have purchased cocaine since September 1983.
    12. I have sold cocaine since September 1983.
    13. Between approximately June 1984, and the date of this Complaint, in Coconino County, and Yavapai County within one (1) mile of Coconino County, Arizona, I and others knowingly associated in an enterprise which involved buying and selling a prohibited drug [cocaine]. I knowingly conducted or participated in the conduct of the affairs of the enterprise through racketeering by committing, for financial gain, the offenses of conspiracy to sell narcotic drugs, sale of narcotic drugs, possession of narcotic

mission on the ground that answering them would require him to incriminate himself in violation of the fifth amendment of the United States Constitution. U.S. Const. amend. V. The state, seeking to compel a response, argued that the fifth amendment privilege applies only to criminal actions and specifically does not apply to requests for admission. The trial court ordered that it would deem admitted any discovery not fully and completely answered within 30 days.

Ott responded to the requests for admission by stating:

> The Defendant denies each of the Plaintiff's twenty-one Requests for Admission and such denial should not be deemed as a waiver of his Fifth Amendment privilege in this proceeding or any other.

Alleging that Ott's response was insufficient, the state requested the court to deem admitted the matters contained in the requests for admission. Relying upon the requests for admission and upon affidavits of persons claiming to have personal knowledge of Ott's alleged criminal activities, the state also moved for summary judgment. Ott opposed the motion for summary judgment and sought a stay of the civil action pending resolution of the criminal proceedings.

The trial court denied Ott's motion for stay, determined that Ott's responses to the requests for admission were inadequate, and deemed the requests admitted. After concluding that no material issues of fact remained, the court granted the state's motion for summary judgment against Ott in the amount of $1,871,100.00. The court also awarded the state interest from the date of judgment.

Ott filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 12–120.21.A.1 and –2101.B.

## II.

■ Our initial inquiry is whether Ott was entitled to invoke his privilege against

---

drugs for sale and possession of drug paraphernalia.

14. Between approximately June 1984, and the date of this Complaint, in Coconino County, and Yavapai County within one (1) mile of Coconino County, Arizona, I and others, with the intent to promote or aid in the commission of the offenses of sale of narcotic drugs, possession of narcotic drugs for sale and possession of drug paraphernalia, agreed with each other and others that at least one of us would engage in conduct constituting those offenses and that, in furtherance of those offenses, overt acts were committed, to wit, I bought and sold narcotic drugs [cocaine] and cutting agents at the Oak Creek Tavern, Sedona, Coconino County and at my residence at 260 Coffee Pot Road, No. 7, Sedona, Yavapai County which is within one (1) mile of Coconino County, Arizona.

15. Between June 1984 and December 1984 I purchased one (1) pound of cocaine from [Jane Doe] with which was mixed one (1) pound of a cutting agent and sold for at least $100.00 per gram to generate a gross gain of $90,720.00 for me.

16. Between approximately June 1984 until approximately December 1984 I purchased at least ninety-six (96) ounces of cocaine (twelve (12) sales of eight (8) ounces) from [Jane Doe] which was mixed with ninety-six (96) ounces of a cutting agent and sold for at least $100.00 per gram to generate a gross gain of $544,320.00 for me.

17. Between approximately December 1984 and approximately April 1986 I purchased fifty-eight (58) ounces of cocaine (two (2) sales of at least twenty-nine (29) ounces) from [John Doe] which was mixed with fifty-eight (58) ounces of a cutting agent and sold for at least $100.00 per gram to generate a gross gain of $328,860.00 for me.

18. Between approximately December 1984 and approximately April 1986 I purchased one hundred sixty (160) ounces of cocaine (twenty (20) sales of at least eight (8) ounces) from [John Doe] which was mixed with one hundred sixty (160) ounces of a cutting agent and sold for at least $100.00 per gram to generate a gross gain of $907,200.00 for me.

19. Between September 1983 and the date of this Complaint, in Coconino County, Arizona, I, and others knowingly associated in an enterprise which involved the purchase of cocaine for resale, possession of cocaine for sale and the sale and furnishing of cocaine.

20. I, knowingly conducted or participated in the conduct of the affairs of the enterprise described above through racketeering by committing, for financial gain, the offenses of conspiracy to sell cocaine, conspiracy to possess cocaine for sale, possession of cocaine for sale and sale of cocaine.

21. Between approximately September 1983 and the date of this Complaint, in Coconino County, Arizona, I, did with the intent to promote or aid in the commission of the offenses of sale of cocaine, possession of cocaine for sale, and possession of drug paraphernalia, agreed with others that at least one of us would engage in conduct constituting those offenses and that, in furtherance of those offenses, overt acts were committed.

self-incrimination when faced with requests for admission in this civil proceeding. The fifth amendment of the United States Constitution, which provides that no person "shall be compelled in any criminal case to be a witness against himself,"[2] prohibits the state from compelling a person, when acting as a witness in any investigation, to give testimony that shows or might tend to show that the person committed a crime. *E.g., Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973). The claimant may invoke the privilege against self-incrimination if he apprehends a real and appreciable risk of prosecution. *Flagler v. Derickson,* 134 Ariz. 229, 231, 655 P.2d 349, 351 (1982). The requests for admission served upon Ott expressly seek admission of criminal activities and therefore would seem to fall within the protection afforded by the fifth amendment. The state, however, advances several arguments to support its position that the privilege does not apply.

The state first argues that the privilege against self-incrimination applies only to criminal cases. We categorically reject that argument. Although the language of the fifth amendment refers only to criminal cases, the privilege against self-incrimination unequivocally applies to civil proceedings as well:

> The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz,* 414 U.S. at 77, 94 S.Ct. at 322, 38 L.Ed.2d at 281. *See also State v. Carvajal,* 147 Ariz. 307, 311, 709 P.2d 1366, 1370 (App.1985).

When discovery requests made in a civil proceeding may tend to incriminate the party on whom the requests are served, the party may legitimately invoke the privilege against self-incrimination. Thus, the claimant may assert his fifth amendment privilege in civil discovery proceedings to justify his refusal to respond to interrogatories, answer deposition questions, or produce documents. *Phelps Dodge Corp. v. Superior Court,* 7 Ariz.App. 277, 438 P.2d 424 (1968); *First Federal Savings & Loan Ass'n v. Schamanek,* 684 P.2d 1257 (Utah 1984). Authority is split, however, on the issue of whether the privilege applies to requests for admission propounded pursuant to Rule 36, Arizona Rules of Civil Procedure. *Compare, e.g., Schamanek,* 684 P.2d 1257 (the privilege applies to rule 36 requests for admission) *with Phelps Dodge,* 7 Ariz.App. 277, 438 P.2d 424 (the privilege does not apply to rule 36 requests for admission).

The justification advanced in *Phelps Dodge* for concluding that the privilege does not apply to requests for admission was that, unlike the other rules of discovery, rule 36 involves "no real danger of criminal penalty...." That is so, the court reasoned, because "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding." *Phelps Dodge,* 7 Ariz. App. at 285, 438 P.2d at 432 (quoting Rule 36(b), Arizona Rules of Civil Procedure). The court concluded that deemed admissions therefore are not testimony that could implicate the defendant in criminal activity.

Other jurisdictions disagree with the reasoning of *Phelps Dodge,* however, and hold that the fifth amendment privilege applies to rule 36 requests for admission. *See, e.g., Schamanek,* 684 P.2d 1257; *Gordon v. FDIC,* 427 F.2d 578 (D.C.Cir.1970); *LeBlanc v. Spector,* 378 F.Supp. 310 (D.Conn. 1974); *FDIC v. Logsdon,* 18 F.R.D. 57 (W.D.Ky.1955). In *Schamanek,* the Utah Supreme Court stated:

**2.** The fifth amendment of the United States Constitution applies to the states through the fourteenth amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The

Arizona Constitution likewise guarantees that "[n]o person shall be compelled in any criminal case to give evidence against himself...." Ariz. Const. art. 2, § 10.

In our view, the interests that the privilege against self-incrimination were designed to safeguard cannot be adequately protected by compelling a person to trade that right for the attenuated protection of Rule 36(b). Full and complete protection of that right can be afforded only if a party may decline to answer by interposing an objection to requests for admissions.

*Schamanek*, 684 P.2d at 1262. The immunity inherent in the restricted use of admissions to the pending action, the court reasoned, is insufficient and does not fully protect the claimant against future criminal charges. *Id.; see generally* Finman, *The Requests for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 384–85 (1962).

■ When we are convinced that a decision of Division Two relies upon clearly erroneous principles, the decision is not binding on this court. *See Scappaticci v. Southwest Savings & Loan Ass'n*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983). In our judgment, the approach taken in *Phelps Dodge* reflects too narrow a view as to the scope of the privilege granted by the fifth amendment and too broad a view as to the scope of immunity provided by rule 36. We conclude that the better rule is that a civil litigant may invoke the privilege against self-incrimination to justify his refusal to respond to requests for admission.

■ The broad scope of the privilege can no longer be questioned. In determining whether the privilege can be invoked, "a court should construe the scope of the privilege liberally and not in a hostile or niggardly spirit." *Schamanek*, 684 P.2d at 1263. This constitutionally-guaranteed privilege "extends beyond obvious admissions of guilt to encompass statements which may only *tend* to incriminate by furnishing one link in the chain of evidence required to convict." *Flagler*, 134 Ariz. at 231, 655 P.2d at 351 (emphasis in original). The claim of privilege thus protects a party when that person's "answer might furnish one tiny link in the chain of evidence tend-

ing to establish [criminal liability]." *Id.* at 232, 655 P.2d at 352.

■ The privilege against self-incrimination does not, however, absolutely bar the state from obtaining incriminatory testimony. The Constitution permits the state to compel testimony if a grant of immunity ensures that neither the compelled testimony nor its fruits are available for use in criminal proceedings. *See Lefkowitz*, 414 U.S. at 84, 94 S.Ct. at 325, 38 L.Ed.2d at 285. A limited grant of immunity will not suffice: to supplant the privilege, the grant of immunity "must be coextensive with the scope of the privilege." *Rivera v. City of Douglas*, 132 Ariz. 117, 121, 644 P.2d 271, 275 (App.1982).

■ The protection afforded by rule 36 falls short of meeting that standard. Rule 36 provides only that an admission made pursuant to the rule may not be used for any purpose other than the pending case and may not be used in any other proceeding. Rule 36(b), Arizona Rules of Civil Procedure. Significantly, the rule does not address the use of the fruits of the admission or protect against an admission that may furnish one tiny link in the chain of evidence establishing criminal liability. *Cf.* A.R.S. § 13–4064 (person may be compelled to answer in a criminal proceeding before a grand jury or court, provided that information derived directly *or indirectly* from the testimony cannot be used against the person in any related proceeding or prosecution). Because rule 36 does not protect against derivative use of information obtained through admissions, its protection is not coextensive with the scope of the privilege against self-incrimination.

In this case, when the state propounded the requests for admission, criminal charges against Ott arising from the same conduct were pending and the same prosecutor represented the state in the criminal and civil proceedings.[3] If the state could compel Ott to admit some elements of the crimes with which he was charged and deny others, admissions that the state

---

3. The state concedes that the facts stated in requests for admission 13 and 14 gave rise to the criminal charges of which Ott has been convicted.

clearly could not require in the criminal action, the state easily could identify the weakest points of Ott's criminal defense. With little imagination, the state could phrase its requests so that giving answers "would furnish a link in the chain of evidence needed to prosecute." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951).

■ The danger that requests for admission could be used in a manner that makes illusory the protection of the fifth amendment is particularly real in a forfeiture action authorized by A.R.S. § 13–2314. To prevail in the civil forfeiture proceeding, the state must prove that Ott committed predicate criminal acts. *See* A.R.S. § 13–2312. We cannot ignore the very real possibility that the state, although restrained from directly using or relying on admissions obtained in a civil action, would nevertheless be able to use the information disclosed to the detriment of Ott in the criminal case. *Cf. Afro–Lecon v. United States,* 820 F.2d 1198, 1203 (Fed.Cir.1987) ("[t]he broad scope of civil discovery may present to ... the prosecution ... an irresistible temptation to use that discovery to one's advantage in the criminal case"). We therefore conclude that the trial court's order that Ott respond to the requests for admission violated Ott's fifth amendment privilege against self-incrimination and that the court could not rely upon the deemed admissions to award summary judgment.

■ The state argues, however, that Ott waived his privilege against self-incrimination by simultaneously asserting the privilege and answering the requests for admission with a general denial. Given the circumstances of this case, we conclude that no waiver occurred. Ott waived his privilege against self-incrimination only if he voluntarily answered the requests for admission. *See State v. Tudgay,* 128 Ariz. 1, 4, 623 P.2d 360, 363 (1981). After Ott objected to the requests on fifth amendment grounds, the trial court ordered that it would deem them admitted if Ott failed to respond. The effect of deeming the requests admitted would be to establish the facts set out in the requests. *See* Rule 36(b), Arizona Rules of Civil Procedure. The net result, as in fact occurred, would be that the state would prevail on all issues of liability and damages. The trial court's order therefore forced Ott to choose between surrendering his constitutional privilege and forfeiting property that the state asserts was worth more than $1.8 million. We do not agree that the court, by providing that Hobson's choice, transformed Ott's decision to respond from compulsory to voluntary. *Cf. Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135–36, 53 L.Ed.2d 1, 7 (1977) (the state may not threaten to inflict potent sanctions unless a witness surrenders his fifth amendment privilege).

■ The state also argues that Ott did not properly assert his fifth amendment privilege because he failed to plead the privilege separately in response to each request for admission. We agree that, as a general rule, the claimant may not rely on a blanket assertion of privilege. *See United States v. Moore,* 682 F.2d 853, 856 (9th Cir.1982). When all the questions clearly seek incriminating testimony, however, a party may be excused from separately answering each question. *See United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir. 1980); *State v. Ethridge,* 126 Ariz. 8, 10, 612 P.2d 59, 61 (App.1980). Here, each of the requests sought potentially incriminating testimony. Under those circumstances, Ott's general plea adequately asserted the privilege. *Cf. Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981) (blanket assertion of privilege insufficient in response to interrogatories that included questions about defendant's address, social security number, and the address, place of employment and nearest living relative of defendant's wife).

■ The state finally argues that Ott's general denial in response to the requests for admission was insufficient to meet the procedural requirements of Rule 36(a), Arizona Rules of Civil Procedure. We disagree. Rule 36(a) provides in part:

The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truth-

fully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

The requests required that Ott admit or deny specific allegations of criminal acts. Ott, in a single sentence response, denied all 21 requests. Unless Ott was willing to admit the truth of statements that incriminated or tended to incriminate him, he could not respond in any other manner to the substance of each requested admission. To find, as the state would have us do, that Ott should have written the word "deny" below each of the 21 requests would exalt form over substance. Under the circumstances of this case, we conclude that Ott's general denial fairly and adequately met the substance of the requested admissions.

### III.

The trial court granted summary judgment in favor of the state in reliance upon the deemed admissions and upon affidavits of individuals who claimed to have personal knowledge of Ott's alleged criminal activities. Because the trial judge should not have deemed the requests admitted, we can sustain the judgment only if evidence independent of the deemed admissions would permit reasonable jurors applying the law to the facts to reach but one conclusion. *See Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 799 P.2d 810 (1990).

Although Ott candidly conceded at oral argument that the affidavits submitted by the state in support of the motion for summary judgment are sufficient to establish liability as a matter of law, he asserts that the affidavits are insufficient to establish the amount of damages. We agree.

Summary judgment is appropriate only when no disputed issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See id.,* at 472, 799 P.2d at 813; Rule 56, Arizona Rules of Civil Procedure. The state's

allegations as to the amount subject to forfeiture derive from statements made during interviews conducted by investigators for the state. During those interviews, persons who allegedly sold narcotic drugs to Ott estimated the number of transactions in which Ott was involved, the amount involved in each transaction, and the price per ounce charged for the narcotics sold in each transaction. According to one of the investigators, his goal in requiring the witnesses to make those estimates was to "just try to establish a ball park guesstimate." While establishing that "guesstimate" may have been sufficient for purposes of the investigation, reasonable jurors certainly could disagree as to the number of transactions with which Ott was involved and the value of the narcotics sold during each transaction. Because a jury could resolve these material issues of fact in favor of either party, the court should not have granted summary judgment on the issue of damages. For that reason, we reverse the judgment establishing the amount subject to forfeiture and remand this matter for further proceedings as to that issue.

### IV.

Ott also contends that the trial court abused its discretion in denying his application for a stay pending the outcome of the criminal proceedings against him. We disagree.

Whether to grant a stay is within the trial court's discretion. *Afro–Lecon v. United States,* 820 F.2d 1198, 1202 (Fed.Cir.1987). No federal or state constitutional rule prohibits parallel civil and criminal proceedings. *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1, 10 n. 27 (1970); *State ex rel. Corbin v. Goodrich,* 151 Ariz. 118, 125, 726 P.2d 215, 222 (App.1986). If parallel proceedings would substantially prejudice the defendant's rights, however, the court should stay the civil proceedings. *Securities and Exchange Comm'n v. Dresser Industries,* 628 F.2d 1368, 1374

(D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

 In deciding whether to grant a stay, the court should consider a number of factors, including whether the civil and criminal proceedings involve the same matter, whether resolution of the criminal case would "moot, clarify, or otherwise affect various contentions in the civil case," and whether the possibility exists that a party might "exploit civil discovery for the advancement of his criminal case." *United States v. Mellon Bank,* 545 F.2d 869, 873 (3d Cir.1976). Additional circumstances weighing in favor of a stay include "malicious prosecution, the absence of counsel for defendant during depositions, agency bad faith, malicious government tactics, and 'other special circumstance.'" *Afro-Lecon,* 820 F.2d at 1202 (quoting *Dresser Industries,* 628 F.2d at 1375).

We believe that the better practice is for the trial court to state the reasons for granting or denying a stay, thereby providing the appellate court a basis for understanding the trial court's ruling. In this case, the record does not indicate the trial court's reasons for denying the stay. The record, however, reveals no basis for concluding that the decision to permit the civil proceedings to move forward substantially prejudiced defendant's rights. We therefore conclude that, although a stay of the civil proceedings may have been preferable under these circumstances, the trial court did not abuse its discretion in denying the stay.

### V.

Ott argues that the trial court erred by awarding interest to the state because the state did not request an award of interest in the complaint. Because this question may arise on remand, we address it now.

The trial court awarded judgment in favor of the state, "plus interest at the legal rate until paid." Rule 54(d), Arizona Rules of Civil Procedure, grants the trial court authority to award the prevailing party the relief to which the party is legally entitled. *Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 495, 484 P.2d 639, 648 (1971). A prevailing party is entitled to interest on the amount of judgment at the rate of ten percent. *See* A.R.S. § 44-1201. The trial court did not err in awarding interest from the date of judgment.

### VI.

For the foregoing reasons, we affirm summary judgment in favor of the state on the issue of liability and reverse and remand for further proceedings on the issue of damages.

FIDEL, P.J., and LANKFORD, J., concur.