IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

APR 30 2007

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Appellee, | ) | 2 CA-CR 2006-0137 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | **O P I N I O N** |
| STEVEN RAY MILLER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF MARICOPA COUNTY

Cause No. CR2005-102749-001 DT

Honorable Gerald Porter, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Julie A. Done
                                                            Phoenix
                                            Attorneys for Appellee


James Haas, Maricopa County Public Defender
  By Edward F. McGee
                                                            Phoenix
                                            Attorneys for Appellant

---

E C K E R S T R O M, Presiding Judge.

¶1 Steven Miller was convicted after a jury trial of two counts of armed robbery and was acquitted of one count. The trial court sentenced him to presumptive, concurrent prison terms of 9.25 years. Miller contends the trial court abused its discretion when it admitted evidence that, following Miller's arrest, no further armed robberies involving the same *modus operandi* occurred in the city of Tempe. He also argues the court committed fundamental error by enhancing his sentence without documentary proof that he had prior felony convictions.

**Background**

¶2 We view the evidence in the light most favorable to sustaining the jury's verdicts. *State v. Newnom,* 208 Ariz. 507, ¶ 2, 95 P.3d 950, 950 (App. 2004). Tempe Police Detective Stephen Laird was assigned to investigate a robbery at a video store. After reviewing suspect descriptions and the *modus operandi* employed in the commission of other recent robberies, Laird concluded the same person had committed robberies at two other commercial establishments. He also compared the still photographs from the video store and one of the other establishment's security cameras. Because of the similarities in the photographs, Laird concluded that the perpetrator in each case was likely the same individual.

¶3 During trial, the prosecutor asked the detective if there had been any other reports of robberies committed by "a [white] guy with long brownish red hair, beanie cap, blue flannel shirt" since the defendant was arrested. The court sustained Miller's objection to that question. Later, after an unreported bench conference, the court read a jury question

asking: "Have there been any Tempe robberies since January of 2005 with the same appearing wig and blue shirt?" The detective responded that there had been no other such robberies. At the next break, the court allowed counsel to make a more complete record on their positions regarding that question and answer. At this time, Miller articulated that he objected on relevancy grounds.

¶4 During the aggravation phase of Miller's trial, the state called as a witness Kristin Sherman, a prosecutor for the Maricopa County Attorney's office, to prove Miller previously had been convicted of felonies. Sherman testified about having prosecuted Miller in September 2005 for four separate felony offenses and that the prosecutions had resulted in convictions. Defense counsel did not object to Sherman's testimony or raise any other objections regarding the sufficiency of the evidence of Miller's felony convictions. The jury found that the state had proved beyond a reasonable doubt that Miller previously had been convicted of a felony within ten years immediately preceding the date of the offense.

**Admission of Evidence**

¶5 Miller contends the trial court erred by admitting into evidence the detective's testimony that no similar crimes had taken place after Miller's arrest, arguing this evidence did not prove any material fact and, therefore, was not relevant. Laird's testimony constitutes negative evidence, "'testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred.'" *State v. Rivera,* 152 Ariz. 507, 517, 733 P.2d 1090, 1100 (1987), *quoting* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 664, at 907 (James H.

Chadbourn rev., 1979). Arizona has rejected the rule that negative evidence is *per se* impermissible. *Id.* Thus, we will "analyze the admissibility of the proffered evidence under the rules of evidence." *Id.*

**¶6** "In determining relevancy and admissibility of evidence, the trial judge has considerable discretion." *State v. Smith*, 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401, 17A A.R.S. The trial court, however, may exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Ariz. R. Evid. 403; *see also State v. Williams*, 133 Ariz. 220, 230, 650 P.2d 1202, 1212 (1982).

**¶7** Miller relies on the Pennsylvania Supreme Court case, *Commonwealth v. Foy*, 612 A.2d 1349 (Pa. 1992). In that case, the court concluded that, even "where a series of crimes is so similar as to bear the marks of a common signature," evidence of their cessation after the arrest of a defendant is not relevant. *Id.* at 1351-52. Reviewing evidence almost identical to that proffered here, that court explained:

> "[T]here are many possible reasons for an absence of additional reported crimes that are consistent with the defendant's innocence. Police testimony concerning the reports could be inaccurate. Further signature crimes may have been committed but never reported to the police. The true culprit may have died, or left the community, or been incarcerated on unrelated charges about the time of the defendant's arrest. Or perhaps the true culprit has decided to refrain from further acts of violence in order to shift suspicion onto the defendant and thereby escape detection."

4

*Id.* at 1351. The court also held that, even if such cessation evidence was considered relevant, its probative value would be substantially outweighed by the danger of unfair prejudice. *Id.* at 1352. Specifically, the court suggested that the jury might place undue weight on such evidence and find the defendant's guilt based on that fact alone. *Id.*

**¶8** We disagree with the *Foy* court's analysis to the extent it suggests that the cessation evidence lacks sufficient probative value to clear the relevance threshold. As discussed, evidence need only have a tendency to make the existence of a material fact more or less probable to be relevant. Ariz. R. Evid. 401. Our supreme court has observed that "[t]his standard . . . is not particularly high." *State v. Oliver*, 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988). Although the cessation of crimes testimony may have limited probative value for precisely the reasons set forth by the Pennsylvania Supreme Court, we cannot agree that, under our standards for relevancy, it has no probative value at all. Logic requires the modest conclusion that evidence of the cessation of the signature robberies after Miller's arrest has a *tendency* to make it *more probable* that Miller committed them. Thus, we reject Miller's argument that the evidence lacked sufficient relevance to be admissible.

**¶9** We are more inclined to agree with the *Foy* court that the limited probative value of cessation evidence might be outweighed by the risk that the jury will give such testimony undue weight. *See* Ariz. R. Evid. 403; *see also State v. Hummert*, 188 Ariz. 119, 126, 933 P.2d 1187, 1194 (1997) (affirming preclusion of defendant's arguably relevant evidence that another person committed similar signature crime on ground that probative value was outweighed by "danger of confusing and misleading the jury"). However, Miller

5

did not ask the trial court to preclude the evidence on that basis. And, although Miller has implicitly contended on appeal that the prejudicial impact of the evidence outweighed its probative value, he has not contended that the trial court's failure to preclude the evidence on that ground constituted fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005) (defendant who fails to object at trial forfeits right to obtain appellate relief except in those "rare cases" involving fundamental error). Because the trial court acted within its discretion in determining that Laird's testimony was relevant, and because Miller has not contended that the court erred fundamentally in admitting the evidence notwithstanding its potential prejudicial impact, we affirm Miller's convictions.[1]

## Sentencing Error

¶10        Miller also argues the trial court fundamentally erred when it found he had prior felony convictions in the absence of documentary proof and, as a result, imposed enhanced prison terms on each count. Because Miller did not object to the court's finding of a prior felony conviction, we review solely for fundamental error. *See id.* To prove such error, Miller must show three things: 1) the error occurred; 2) the error "goes to the foundation of the case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial," and 3) the error caused him

---

[1]We do not purport to address what application, if any, Rule 404(b), Ariz. R. Evid., has to the evidentiary problem presented by Laird's testimony. That testimony was neither proffered by the state, nor challenged by the defense, with reference to the criteria set forth in Rule 404(b) for the admission of prior or subsequent acts.

prejudice. *Id.* ¶¶ 23-26. "Fundamental error review involves a fact-intensive inquiry, and the showing required to establish prejudice therefore differs from case to case." *Id.* ¶ 26.

**¶11** At the outset, Miller is correct that the trial court erred by not requiring documentary proof in addition to Sherman's testimony. In *State v. Hauss*, 140 Ariz. 230, 681 P.2d 382 (1984), our supreme court addressed the same legal issue raised here. There, the state attempted to prove two prior felony convictions solely through the testimony of a probation officer. *Id.* at 231, 681 P.2d at 383. The court explicitly rejected this method for proving prior convictions, reaffirming that "'[t]he proper procedure to establish the prior conviction is for the state to offer in evidence a certified copy of the conviction [rules omitted] . . . and establish the defendant as the person to whom the document refers.'" *Id., quoting State v. Lee*, 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976) (alterations in *Hauss*).[2] The court provided "two very limited exceptions" to the document requirement for proving prior convictions: (1) if the defendant admits the prior conviction while testifying in court, or (2) the state shows that it was unable to obtain the documentation despite diligent efforts and other evidence is highly reliable. *Id.* Neither of these exceptions applies in this case.

**¶12** Recently the *Hauss* rule was expanded in *State v. Robles*, 213 Ariz. 268, ¶ 16, 141 P.3d 748, 753 (App. 2006) (citation omitted), in which this court noted that while the "preferred method of proving prior convictions for sentence-enhancement purposes is

---

[2]Because the court had not previously required documentary proof, it declined to grant the defendant relief, observing that the felony convictions were sufficiently established by the "highly reliable" testimony of the probation officer. *Hauss*, 140 Ariz. at 231-32, 681 P.2d at 383-84.

submission of certified conviction documents, . . . courts may consider other kinds of evidence as well." *See State v. White*, 160 Ariz. 24, 28, 770 P.2d 328, 332 (1989) (state proved prior conviction based on out-of-state commitment record); *State v. Nash*, 143 Ariz. 392, 403, 694 P.2d 222, 233 (1985) (holding prison records sufficient to establish prior convictions). The court qualified this statement by emphasizing the purpose of the court's holding in *Hauss*, which was to avoid "'credibility contests' and 'unfair[ness] to defendants'" resulting from purely testimonial evidence. *Robles*, 213 Ariz. 268, ¶ 15, 141 P.3d at 753, *quoting Hauss*, 140 Ariz. at 231, 681 P.2d at 383 (alteration in *Robles*). Thus, while other forms of documentation are acceptable, our supreme court still requires reliable documentary evidence to prove that a defendant previously has been convicted of a felony.

¶13　　　　We must therefore agree the trial court erred in permitting the jury to find prior felony convictions solely based on testimonial evidence. But, Miller has failed to demonstrate he was prejudiced by the error. *See Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607-08. Miller simply argues he would have received a lesser sentence and the court might have been more lenient had it not permitted the jury to consider the prior felony convictions. He does not suggest that he was not convicted of the felonies at issue or that the state would have been unable to produce the necessary documentary evidence if he had timely objected to the form of the evidence presented. *See Robles*, 213 Ariz. 268, n.4, 141 P.3d at 753 n.4. Because Miller has failed to articulate how the error prejudiced him, he has

failed to meet his burden under our standard for fundamental error review.[3] *Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d at 608-09.

**¶14**      Affirmed.


_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge

---

[3]We therefore need not address whether Miller also failed to establish that the error went to the foundation of the case, took away a right essential to his defense, and was of such magnitude that he did not receive a fair trial. *State v. Henderson*, 210 Ariz. 561, ¶¶ 23-26, 115 P.3d 601, 608-09 (2005).