NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KRISTA MARIE CLINE, *Appellant*.

No. 1 CA-CR 22-0230
FILED 6-29-2023

Appeal from the Superior Court in Yavapai County
No. V1300CR201880022
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Krista Marie Cline, Goodyear
*Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

---

**M c M U R D I E**, Judge:

**¶1**        Krista Marie Cline appeals from her convictions and sentences for theft and fraudulent schemes and artifices. We find no reversible error and affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Cline managed the assets of several trusts, all signed and executed in Yavapai County. Between 2014 and 2017, Cline served as the trustee of the Nelson Trust.[2] During this time, Cline failed to provide an annual accounting or distribute proceeds to the beneficiaries. Cline entered a 30-year "owner-carry" contract for the trust's residential property with "extremely unfavorable terms" and never distributed the proceeds to beneficiaries. Cline sold assets belonging to the trust's commercial property without depositing the proceeds in the trust account, informing beneficiaries, or making distributions. When Cline began her tenure with the Nelson Trust, the trust account had around $60,000 in assets. In the end, the trust account had less than $500 remaining.

**¶3**        In 2017, the probate court ordered Cline to provide an accounting for the Nelson Trust. When Cline eventually disclosed the accounting, it lacked a detailed itemization of expenses, fees, and service dates. Trust account records showed over $50,000 in transfers and withdrawals were made without documentation. Cline's banking records revealed that she transferred $35,065 from the trust to her fiduciary account,

---

[1]        We view the facts in the light most favorable to upholding the verdicts. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        We use pseudonyms to protect the privacy of the trusts and beneficiaries.

$22,950 to her checking account, $6,250 to another business account, and $600 to pay her credit card bill.

¶4  Between 2014 and 2018, Cline served as the trustee of the Porter Trust. Although the trust's executor had personally "taken care of most of his affairs," Cline removed $32,758 of the trust's $45,000 cash assets throughout her time as a trustee. Her banking records showed that she transferred $11,592 from the trust account to her fiduciary account, $14,700 to her checking account, $2,550 to another business account, and $3,916 to pay her credit card bill. Cline also sold vehicles belonging to the trust for about $6,600 without depositing the proceeds into the trust account.

¶5  For nine months in 2017, Cline served as the trustee of the Kennedy Special Needs Trust. When first executed, the trust had over $15,000 to help Kennedy live independently. Cline's banking records showed she transferred $5,103 from the trust account to her fiduciary account, $560 to her checking account, and $1,412 to pay her credit card accounts. At the end of her tenure as trustee, only around $3,000 remained.

¶6  With an investigation into Cline's trust management looming, she provided additional invoices to authorities. For the Nelson and Porter Trusts, the invoices did not list specific dates for services rendered, and the time spent on routine services appeared heavily inflated, consistently rounded up to "large even hours." Some invoices showed Cline billed for services she had not completed. For the Kennedy Trust, the formatting of the invoices differed from those of the other trusts, with dates specified next to the services rendered. The invoices, however, contained inflated hours for routine services, discrepancies in expenses, and creation dates after Cline stopped acting as trustee. When Cline eventually spoke with the lead detective, she could not recall making any "improper transfers" and denied transferring money to anything but her fiduciary account.

¶7  The State charged Cline with three counts of fraudulent schemes and artifices, Class 2 felonies (Counts 1, 3, and 5), two counts of theft, Class 2 felonies (Counts 2 and 4), and one count of theft, a Class 6 felony (Count 6). Counts 1 and 2 applied to offenses committed against the Nelson Trust, Counts 3 and 4 applied to crimes against the Porter Trust, and Counts 5 and 6 applied to crimes against the Kennedy Trust.

¶8  In an unrelated criminal case, Cline was tried and convicted for mismanaging another trust between January 2016 and March 2017. *See State v. Cline* (*the 2017 case*), 1 CA-CR 20-0257, 2021 WL 871756, at *1–2, ¶¶ 2–3, 9 (Ariz. App. Mar. 9, 2021) (mem. decision). In the 2017 case, the

superior court sentenced Cline to multiple concurrent terms of imprisonment. *Id*. at *2, ¶ 9. We affirmed Cline's convictions but corrected an error in the sentencing minute entry. *Id*. at *6, ¶¶ 35–36.

¶9        As the trial approached in this case, Cline waived her right to counsel and elected to represent herself. In this capacity, Cline filed several pretrial motions, including a motion to dismiss for lack of subject matter jurisdiction. She argued that the criminal court lacked jurisdiction because trusts fall within the domain of the probate court. The superior court granted some of Cline's motions but denied the motion to dismiss.

¶10        In the six-day jury trial, the State presented testimony from (1) the lead detective about the relevant trusts; (2) beneficiaries, counsel for the successor trustee, and other interested parties associated with the Nelson Trust; (3) family members associated with the Porter Trust; (4) the successor trustee for the Kennedy Trust; (5) a fiduciary expert; and (6) a forensic accountant.

¶11        At the close of the State's case, Cline moved for a judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a)(1), arguing the evidence showed she acted within her lawful authority as trustee. The superior court denied the motion. Although Cline chose not to testify on her behalf, she called witnesses associated with the Kennedy Trust. Cline presented evidence of legitimate, documented purchases she made for Kennedy while acting as trustee.

¶12        In its closing argument, the State focused on the sparse, nonspecific, and hurried nature of the accounting Cline provided authorities. The State contended that compared to Cline's personal and business accounts, the jury could reasonably infer that she created the invoices "after the fact using bank records as a guide." In Cline's closing argument, she attacked the investigation, claiming authorities should have uncovered more details about her banking records, income, and online scheduling. Before its rebuttal argument, the State informed the court that it intended to comment on Cline's failure to provide any additional, possibly exculpating, documents. Cline did not object, and the court found it an appropriate rebuttal argument. The State then argued to the jury that authorities gave Cline a chance to provide additional documentation, but she chose not to do so.

¶13        The jury convicted Cline on Counts 1 through 4 but could not reach a unanimous verdict on Counts 5 and 6. The court granted the State's motion to dismiss Counts 5 and 6 with prejudice. The jury found one

aggravating factor applied to Counts 1 and 3, and two aggravating factors involved Counts 2 and 4. After the jury rendered its verdict, Cline renewed her motion for judgment of acquittal under Rule 20(b)(1). She argued insufficient evidence supported her convictions, and she acted within her lawful authority in managing the trusts. The court denied the motion, finding sufficient evidence that Cline exceeded her role as a fiduciary in controlling and depriving the beneficiaries of the trust assets.

¶14        As sentencing approached, Cline submitted a sentencing memorandum and letters of support from friends and family. Cline asked for leniency and requested presentence incarceration credit for her time in custody in the 2017 case. She moved to preclude portions of the adult probation department's presentence report, arguing it included false and inaccurate statements. The court conducted a two-day presentence hearing, where Cline called the presentence report writer to testify about her findings and challenged the nature of the report. Cline's family and friends testified, further countering the recommendations made in the report. The court sustained Cline's objections to technical errors but declined to preclude the "investigative narrative."

¶15        At the sentencing, the State argued that the offenses in Cline's 2017 case constituted two prior felony convictions. The State also argued that consecutive sentences would be appropriate because Cline harmed multiple victims. Acknowledging the disposition in the 2017 case, Cline contended that the offenses, in that case, represented only one prior felony conviction and should run concurrently with her sentences in this case.

¶16        Noting that the 2017 case involved one victim, the superior court agreed with Cline and found the 2017 case constituted one prior felony conviction, or the equivalent of the first felony offense, under A.R.S. § 13-703(A).[3] The court balanced the aggravating and mitigating factors, including the jury's findings and Cline's family and community support. Based on these factors, the court sentenced Cline as a category one repetitive offender on Counts 1 and 2, imposing slightly mitigated terms of 4.5 years' imprisonment, and as a category two repetitive offender on Counts 3 and 4, imposing slightly mitigated terms of 7 years' imprisonment. *See* A.R.S. § 13-703(A), (H)–(I). The court ordered the sentences to be served

---

[3]        We cite versions of the sentencing statutes in effect at the time of the offenses. *See* A.R.S. § 1-246 ("[T]he offender shall be punished under the law in force when the offense was committed.").

concurrently to each other but consecutively to her sentences in the 2017 case. The court awarded two days of presentence incarceration credit.

¶17 After sentencing, Cline moved to modify the sentence, arguing that the court erred by (1) failing to conduct a trial on her prior convictions before imposing sentence enhancements; (2) running her sentences consecutively to those in the 2017 case; (3) failing to calculate her presentence incarceration credit accurately; (4) considering false information in the presentence report; and (5) denying her the right to allocution. The court found the motion entitled Cline to a priors trial with oral argument.

¶18 After the priors trial, the court found sufficient evidence of Cline's prior felony conviction in the 2017 case. In reaching its decision, the court reviewed the State's pretrial allegation of Cline's prior felony conviction and the certified copies of the felony convictions and booking information. The court also noted that it presided over the 2017 case. The court found consecutive sentences in the current and 2017 cases appropriate because they involved separate victims. As a result, Cline was only entitled to presentence incarceration credit for two days spent in custody for this case. The court found no merit to Cline's claims about the presentence report and right to allocution, noting that she fully litigated all perceived sentencing issues. Thus, the court denied Cline's motion to modify the sentence.

¶19 Cline timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### A. The Superior Court Had Subject Matter Jurisdiction.

¶20 Cline argues the superior court erred by denying her motion to dismiss for lack of subject matter jurisdiction, claiming the indictment did not confer jurisdiction on the "criminal court." She contends jurisdiction vested solely in the probate court. We review challenges to a court's jurisdiction *de novo. Lay v. Nelson*, 246 Ariz. 173, 175, ¶ 8 (App. 2019).

¶21 "'[S]ubject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010). The Arizona constitution grants the superior court jurisdiction over all "[c]riminal cases amounting to felony." Ariz. Const. art. 6, § 14(4); *see also* A.R.S. § 12-123(A). As outlined in A.R.S. § 13-108(A)(1), jurisdiction is established if the "[c]onduct

constituting any element of the offense or a result of such conduct occurs within this state." That a defendant may have a parallel civil case involving the same conduct does not divest the court of jurisdiction. *See State v. Ott*, 167 Ariz. 420, 428 (App. 1990) ("No federal or state constitutional rule prohibits parallel civil and criminal proceedings."); *see also Acolla v. Peralta*, 150 Ariz. 35, 38 (App. 1986) (There are many "instances in which civil remedies are permitted for acts which also carry criminal penalties.").

**¶22**         Contrary to Cline's assertion, the indictment invoked the subject matter jurisdiction of the superior court. *See State v. Buckley*, 153 Ariz. 91, 93 (App. 1987) (filing of indictment confers jurisdiction on the court). The State filed criminal charges against Cline for fraudulent schemes and artifices and theft, both of which are felony offenses. A.R.S. §§ 13-2310(A), 13-1802(A), (G). The indictment for those charges triggered the court's jurisdiction to try and sentence Cline. *See State v. Rodriguez*, 205 Ariz. 392, 395, ¶ 7, n.1 (App. 2003) (The court generally has "jurisdiction over any criminal case in which the defendant is charged by indictment or information with a felony."). Cline's involvement in the parallel probate case did not strip the court of jurisdiction in her criminal case. *See Ott*, 167 Ariz. at 428. The court correctly exercised its jurisdiction under A.R.S. § 13-108(A)(1).

**B.      The Superior Court Did Not Err by Denying Cline's Motion for Judgment of Acquittal.**

**¶23**         Cline challenges the sufficiency of the evidence supporting all counts, arguing the superior court erred by denying her motion for judgment of acquittal under Rule 20(a)(1) and (b)(1). We review the court's ruling on Cline's motion for judgment of acquittal *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

**¶24**         Rule 20 allows a defendant to move for a judgment of acquittal before or after the verdict "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1), (b)(1). Substantial evidence "is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)). The critical inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This inquiry does not permit the reviewing court to reweigh conflicting evidence or assess witness credibility. *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38

(App. 2013). Cline argues the superior court misapplied the law in making its determination and later in instructing the jury.

¶25         To secure a conviction for fraudulent schemes and artifices, the State must prove the defendant "knowingly obtain[ed] any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). The Arizona Supreme Court has adopted a broad view of the statute. It concluded that fraudulent schemes and artifices can be "accomplished either by active misrepresentations, or omitting material facts which defendant knew were being misunderstood, or by stating half-truths, or by any combination of these methods." *State v. Haas*, 138 Ariz. 413, 423–24 (1983). The evidence at trial showed that, through misrepresentation and omission, Cline misled those associated with the Nelson and Porter Trusts to gain a benefit. Cline represented herself as a fiduciary, promising to function within that role ethically and in the best interest of the trusts. Cline then used her authority as trustee to sell trust property and transfer funds from the trust to her accounts. Cline made material omissions in her accounting, using vague and inflated numbers to conceal her misuse of trust assets. Even if some of the accounting contained "half-truths," the elements of A.R.S. § 13-2310(A) would still be satisfied. *See id*. at 423.

¶26         To secure a conviction for theft, the State had to prove that, without lawful authority, the defendant knowingly controlled the "property of another with the intent to deprive the other person of such property." A.R.S. § 13-1802(A)(1). Theft of property valued at $25,000 or more is a Class 2 felony. A.R.S. § 13-1802(G). The statute applies to any "unlawful 'acquisition' of property belonging to others." *State v. Tramble*, 144 Ariz. 48, 52 (1985). The evidence at trial showed that Cline transferred most of the funds from the Nelson and Porter Trusts to her accounts, intending to deprive beneficiaries of trust assets. Cline's role as trustee did not give her lawful authority, as she contends, to drain the trust accounts of assets or sell trust property without distributing the proceeds to the beneficiaries. The evidence satisfied the elements of A.R.S. § 13-1802(A)(1).

¶27         The court reached a legally correct decision by denying the motion for judgment of acquittal and provided jury instructions consistent with the relevant statutes and Revised Arizona Jury Instructions ("RAJI"). *See* RAJI Stat. Crim. 18.02.01, 23.10 (5th ed. 2019); *see also State v. Noriega*, 187 Ariz. 282, 284 (App. 1996) ("The purpose of jury instructions is to inform the jury of the applicable law in understandable terms."). The superior court did not err by denying Cline's motion for judgment of acquittal under Rule 20(a)(1) and (b)(1).

## C.      The Superior Court Did Not Commit Misconduct.

¶28        Cline argues the superior court displayed a pattern of hostility toward her, "systematically" denying her motions, applying the law incorrectly, and considering facts outside the scope of the case. She also contends that the court acted "in the 'absence of jurisdiction,'" and all rulings made after learning of the jurisdictional defect constituted misconduct. Because Cline did not raise these issues below, she is not entitled to relief absent fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018).

¶29        The right to a fair trial necessarily includes "the right to have the trial presided over by a judge who is completely impartial and free of bias or prejudice." *State v. Neil*, 102 Ariz. 110, 112 (1967). "Bias and prejudice mean a hostile feeling or spirit of ill will, or undue friendship or favoritism, toward one of the litigants." *State v. Hill*, 174 Ariz. 313, 322 (1993). "Judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or deep-seated favoritism." *State v. Macias*, 249 Ariz. 335, 342, ¶ 22 (App. 2020). Judges are presumptively impartial, and overcoming that presumption requires proof of actual, not speculative, bias. *Id*.

¶30        Cline has failed to overcome the presumption. The court gave Cline ample time to litigate evidentiary and procedural issues. The court allowed her to file untimely pretrial motions and granted some. The court correctly ruled on the motion to dismiss for lack of subject matter jurisdiction, acting within its authority to try and sentence Cline. The court heard multiple post-verdict and post-sentencing motions, allowing Cline to litigate issues, present mitigation, and challenge her sentences' legality. The court did not appear partial, biased, or hostile, giving Cline leeway to present her chosen defense and litigate perceived issues. We find no error, fundamental or otherwise.

## D.      The State Did Not Commit Prosecutorial Error.

¶31        Cline contends that the cumulative effect of multiple instances of prosecutorial error prevented her from receiving a fair trial. Although Cline asserted claims of prosecutorial error in post-verdict pleadings, she did not raise the issues before or during the trial. We review solely for fundamental error because she failed to object to the alleged prosecutorial error. *State v. Vargas*, 251 Ariz. 157, 163, ¶ 10 (App. 2021) (citing *Escalante*, 245 Ariz. at 140, ¶ 12). We assess each allegation independently and consider whether they cumulatively led to an unfair

trial. *State v. Arias*, 248 Ariz. 546, 556, ¶ 32 (App. 2020). A defendant will not prevail on such a claim without first showing that an error occurred. *See id.* at 555, ¶ 31.

### 1. The State's Closing Arguments Were Not Improper.

**¶32** Cline argues that the State shifted the burden of proof in closing arguments by commenting on her failure to present evidence and referred to facts not in evidence by discussing how the sparse nature of her accounting demonstrated culpability.

**¶33** Counsel is given "wide latitude" in closing arguments to the jury. *State v. Comer*, 165 Ariz. 413, 426 (1990). Counsel may summarize properly admitted evidence, ask the jury to draw reasonable inferences, and suggest conclusions. *State v. Bible*, 175 Ariz. 549, 602 (1993). Although the State must not shift the burden of persuasion to the defense, *Sandstrom v. Montana*, 442 U.S. 510, 523–24 (1979), the State may "comment on the defendant's failure to present exculpatory evidence," *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160 (1987). In determining whether the State's closing arguments created an error, we consider "the context in which the statements were made as well as 'the entire record and . . . the totality of the circumstances.'" *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012) (quoting *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003)).

**¶34** The State's comments fell within the latitude afforded to counsel in closing arguments. The State's suggestion that Cline created the accounting "after the fact" to conceal the offenses aligned with the admitted documents, which contained gaps, omissions, and non-specific dates. *See State v. Corona*, 188 Ariz. 85, 91 (App. 1997) (Argument of counsel is permitted if it is "sufficiently linked to the evidence."). The jury could have drawn reasonable inferences that the accounting demonstrated culpability and showed Cline's attempt to make large transfers of funds appear legitimate. Nor did the State commit error by pointing out that Cline could have provided the authorities with exculpatory documentation. As the superior court noted, the argument constituted proper rebuttal. *See State v. Edmisten*, 220 Ariz. 517, 525, ¶ 25 (App. 2009) (The court found the prosecutor's rebuttal argument appropriate when the defendant "opened the door to such argument, and the prosecutor was entitled to respond."). The State did not argue facts not in evidence and did not engage in burden-shifting.

### 2. The State Did Not Present False Testimony.

**¶35** Cline contends that the State introduced perjured testimony in the grand jury proceedings and at the trial, claiming the State's witnesses gave false statements about the location of the offenses and conduct related to the Kennedy Trust. While the State must not knowingly use false or perjured testimony to obtain a conviction, an inconsistency in witness testimony does not constitute perjury. *State v. Ferrari*, 112 Ariz. 324, 334 (1975). Such testimony is simply fodder for cross-examination or impeachment, to be considered by the jury in assessing witness credibility. *See id.* Even so, the prejudicial impact of materially false testimony can be cured if corrected through further witness examination. *See State v. Holsinger*, 115 Ariz. 89, 92–93 (1977).

**¶36** The State did not present false testimony at any stage of the proceedings. The lead detective testified to the grand jury that the offenses occurred in Yavapai County. This proved true at trial when the State presented evidence that trust property, beneficiaries, and the execution of trusts fell within Yavapai County. The detective did not commit perjury. *See* A.R.S. § 13-109(A) ("Criminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred.").

**¶37** At trial, parties associated with the Kennedy Trust gave conflicting testimony about Cline's purported misuse of funds. Cline impeached the witnesses with evidence showing she made legitimate purchases for Kennedy's benefit. As Cline concedes, she cured inconsistencies in this testimony and later obtained dismissals for all counts associated with the Kennedy Trust. Cline has shown no error.

**¶38** Having addressed each instance in turn, we find no error. Without such a finding, Cline has failed to show the cumulative effect of the alleged conduct so infected her trial with unfairness that she was denied due process.

### E. The Superior Court Did Not Commit Reversible Sentencing Error.

**¶39** Cline raises several alleged sentencing errors. We generally review sentencing claims for an abuse of discretion, *State v. Jenkins*, 193 Ariz. 115, 121, ¶ 25 (App. 1998), but we review un-objected sentencing orders for fundamental error, *see Escalante*, 245 Ariz. at 140, ¶ 12. We review the superior court's application of sentencing statutes and issues of statutory interpretation *de novo*. *State v. Lambright*, 243 Ariz. 244, 249, ¶ 9 (App. 2017). We will not remand for resentencing if the sentences fall within

the prescribed statutory range. *State v. Munninger*, 213 Ariz. 393, 397, ¶ 12 (App. 2006).

### 1.    The Record Establishes Cline's Prior Felony Conviction.

**¶40**        Cline argues the superior court erred by finding she had one non-historical prior felony conviction, incorrectly sentencing her as a repetitive offender under A.R.S. § 13-703(A) and conducting a priors trial after sentencing. Cline does not explicitly challenge the accuracy of the conviction records presented at the priors trial, nor does she argue the State would be unable to prove the conviction if remanded for resentencing.

**¶41**        To enhance a defendant's sentence with a prior conviction, the defendant must admit, or the State must prove, the existence of the conviction. *State v. Morales*, 215 Ariz. 59, 61, ¶¶ 6–7 (2007). Without such evidence, the imposition of an enhanced sentence is fundamental error. *See id*. at 61–62, ¶ 10. The typical remedy for such error would be to remand for "a resentencing hearing at which the state will be put to its burden of proving the prior conviction." *Id*. at 62, ¶ 13. But we need not remand for resentencing when the record proves the existence of the prior felony conviction. *See id*. Even without a priors trial, resentencing is not required if "there would be no point in remanding for a hearing" to admit the conviction records again. *Id*.

**¶42**        First, Cline's prior can be sufficiently gleaned from the presentencing report and sentencing record. The superior court presided over the trial in the 2017 case, the parties acknowledged the disposition of the case several times, and Cline only argued that the offenses in the case constituted one non-historical prior felony conviction. Agreeing with Cline, the court found the non-historical prior felony conviction represented the first offense, Counts 1 and 2 represented the second, category one repetitive offense, and Counts 3 and 4 represented the third, category two repetitive offense. These sentences comply with the versions of A.R.S. § 13-703 in effect during the offenses. *See* 2016 Ariz. Sess. Laws, ch. 43, § 2; 2015 Ariz. Sess. Laws, ch. 74, § 2; 2013 Ariz. Sess. Laws, ch. 55, § 3. We need not remand for resentencing when the record establishes the prior conviction. *See Morales*, 215 Ariz. at 62, ¶ 13.

**¶43**        Second, the superior court's decision to conduct a post-sentencing priors trial does not warrant resentencing. Allowing further testimony and correcting potential errors is the remedy afforded a motion for new sentencing. Cline does not deny that the jury found her guilty in the 2017 case, and she does not claim the State would be unable to

prove the existence of her conviction. *See State v. Miller*, 215 Ariz. 40, 44, ¶ 13 (App. 2007) (Remand was unnecessary when the defendant failed to "suggest that he was not convicted of the felonies at issue or that the state would have been unable to produce the necessary documentary evidence.").

### 2. Remand Is Not Required Under the Applicable Version of A.R.S. § 13-711(A).

**¶44** Cline argues the superior court failed to provide an adequate reason for running her sentences consecutively to those in the 2017 case, as required by A.R.S. § 13-711(A).

**¶45** Under the version of A.R.S. § 13-711(A) in effect at the time of the offenses, "if multiple sentences of imprisonment are imposed on a person *at the same time*, the sentence or sentences imposed by the court shall run consecutively unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence." 2008 Ariz. Sess. Laws, ch. 301, § 27 (emphasis added). The language of this statute is triggered only when multiple sentences are imposed "at the same time." *Id.* Not when, as here, the superior court orders the sentences to be served consecutively to sentences imposed in another case. Nothing in A.R.S. § 13-711(A) required the court to impose concurrent sentences in both cases or to articulate its reasons. Moreover, even if the statute required a basis for imposing a sentence consecutively to another case, the court stated its reasons: multiple victims. No more explanation was needed.

### 3. The Superior Court Did Not Err When Awarding Presentence Incarceration Credit.

**¶46** Cline contends that she is entitled to presentence incarceration credit for all time spent in custody before and after sentencing in the 2017 case. A defendant sentenced to consecutive sentences has a right to credit on just one sentence, "even if the defendant was in custody pursuant to *all* of the underlying charges prior to trial." *State v. McClure*, 189 Ariz. 55, 57 (App. 1997). A defendant is not entitled to "double credit" for time served. *State v. Cuen*, 158 Ariz. 86, 88 (App. 1988). Because the superior court ran Cline's sentences consecutively to those in the 2017 case, she is not entitled to "double credit" for time applied to her sentences in that case. We find no error in the court's award of two days' credit.

**4.    Cline Failed to Raise Additional Claims of Sentencing Error Adequately.**

**¶47**          Finally, Cline raises several other alleged sentencing issues without sufficient argument or citation to the record, including claims the superior court used false information in the presentence report, denied her the right to allocution, and incorrectly interpreted sentencing statutes.

**¶48**          "Failure to argue a claim usually constitutes abandonment and waiver of that claim." *State v. Carver*, 160 Ariz. 167, 175 (1989); *see also* Ariz. R. Crim. P. 31.10(a)(7)(A) (Arguments must contain "supporting reasons for each contention" and "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies."). Waiver aside, the record does not suggest any defects at sentencing requiring reversal. Cline had the chance to litigate any perceived pre- and post-sentencing issues fully. The superior court considered proper factors when imposing sentences within the prescribed statutory range and gave Cline considerable leeway in pleading for leniency. *See Munninger*, 213 Ariz. at 397, ¶¶ 11–12. None of the alleged errors require remand for resentencing.

## CONCLUSION

**¶49**          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA